603 So.2d 597 (1992)
WESTERN WORLD, INC., Joe Anderson and Dan Fletcher, Appellants,
v.
Grace H. DANSBY, Appellee.
No. 91-3218.
District Court of Appeal of Florida, First District.
July 23, 1992.
F. Alan Cummings, Mary M. Piccard, and Mike Piscitelli, Cummings, Lawrence & Vezina, P.A., Tallahassee, for appellants.
Carl R. Pennington, Jr. and Cathi C. Wilkinson, Pennington, Wilkinson, Dunlap, Bateman and Camp, P.A., Tallahassee, for appellee.
WOLF, Judge.
Appellants challenge a second amended final judgment upholding a termination of a lease by their landlord, Grace Dansby, *598 appellee. Appellants raise four points on appeal:
I. WHETHER APPELLEE'S TERMINATION OF LEASE AGREEMENT WAS EFFECTIVE;
II. WHETHER THE TRIAL COURT ERRED IN FINDING APPELLANTS LIABLE FOR PAYMENT OF A HOLDOVER RENT PENALTY;
III. WHETHER APPELLEE IS ENTITLED TO INTEREST ON THE AMOUNTS TENDERED AT THE TIME OF TERMINATION; AND
IV. WHETHER APPELLANTS ARE ENTITLED TO A SETOFF FOR THE AMOUNT OF RENT PAID WHICH IS ATTRIBUTABLE TO PURCHASE PRICE.
We find no merit in appellants' arguments as to issues II-IV and affirm as to those issues without further discussion.[1] We find that the trial court erred in determining that the common law rules of waiver did not apply under the terms of the lease, and in failing to consider the appellants' defense of appellee's waiver of the right to terminate the lease. We, therefore, remand for the trial court to make further determinations as to the applicability of the waiver defense.
The appellants, Western World, Inc., Joe Anderson, and Dan Fletcher (lessees) leased, by written lease agreement, commercially zoned property located at 2309 Apalachee Parkway, Tallahassee, Florida, for a term of 10 years, commencing July 20, 1983. The lease contained an option to purchase, with 75 percent of the monthly rent being applied toward the purchase price. The lease also contained the following provisions which are quoted here in pertinent part:
Article 2
The Base rent for the first two (2) years of this lease shall be $75,000 per annum payable monthly plus any rent use or sales tax or equivalent which may now or in the future be levied. Each year after the second, the base rental shall increase four (4) percent per annum, with the base rental the tenth (10) year being $102,642.00 per annum. Alternatively, should 7% of the gross sales of the business to be conducted on the premises exceed the base rental as calculated on an annual rental term, i.e., July 20 of one year to July 19 of the following year, then the Landlord shall receive the overage in full in cash on or before September 5 of that year and failure to do so shall be a default under the terms of this lease. Lessee shall provide Landlord with an annual report showing gross sales and Landlord may have an audit performed upon the books and records of the Lessee at her expense, if desired.
The base rent shall be due on the 20th of each month and if received after the 1st of the following month a late charge of $100.00 shall be due. Failure to pay said charge shall constitute a default under this lease.
Article 10
Lessee shall be responsible for paying all ad valorem taxes levied on the premises and Landlord shall furnish Lessee with a copy of said tax bill as soon as practical after receipt. Lessee shall have until March 31 of the year following to pay said taxes and failure to pay same shall be a default under this lease. The first year of this lease said ad valorem taxes shall be prorated between Landlord and Lessee to the effective date of this lease, July 20, 1983.
Article 11
Lessee, at its own cost, shall obtain and maintain during the continuance of this lease, "Owners, Landlords and Lessees Liability Insurance," written by an insurance company or companies approved by Landlord, for the benefit of the Landlord and which will fully protect Landlord against any and all liabilities for property *599 damages and personal injuries suffered by reason of such aforedescribed acts and use of the Demised Premises, in the limits of $500,000.00 to apply in the case of one person being injured or killed, and $1,000,000.00 to apply in the case of any one accident, and $100,000.00 to apply in case of property damage. The Lessee shall furnish to Landlord properly certified copies of such insurance policies and of the renewals thereof, and Lessee shall hold Landlord harmless from any and all liability, damages and expenses for any injuries suffered or damage occasioned upon the Demised Premises.
Article 14
It is agreed between the parties hereto that if Lessee shall fail to perform any of the covenants or conditions of this lease on Lessee's part to be performed ... then and in such events this lease and the term of this lease, at Landlord's option, shall expire and in five (5) days after Landlord has given Lessee written notice (in the manner hereinabove provided) of such act, condition, or default, and Lessee hereby agrees immediately then to quit and surrender said premises to Landlord, but this shall not impair or affect Landlord's right to maintain summary proceedings for the recovery of the possession of the premises in all cases provided for by law. If the term of this lease shall be so terminated, Landlord may immediately or at any time thereafter re-enter or repossess the premises and remove all persons and property therefrom without being liable for trespass or damages.
Article 18
No waiver of any condition or covenant of this lease by Landlord shall be deemed to imply or constitute a further waiver by Landlord of any other condition or covenant of this lease. The rights and remedies created by this lease are cumulative and the use of one remedy shall not be taken to exclude or waive the right to use of another.
Article 27
All rents shall be due without the necessity of any notice from the Landlord to the Lessee.
Article 28
This lease contains the entire agreement between the parties hereto and it may be modified only by an agreement in writing executed by Landlord and Lessee with the same formalities as this lease.
Article 29
It is understood and agreed between the parties hereto that time is of the essence in the performance of all the terms and provisions of this lease.
Western World paid rent to Dansby under the lease agreement every month. Over a four-and-one-half year period, there were three times when Western World paid the wrong amount of rent  each time when the annual increase became due. When this occurred the first two times, Dansby reminded appellants that the rent had increased. Upon notification, the correct amounts were paid and appellee accepted the payment. When the rent increased in July 1987, however, appellee did not remind appellants as she had in the past, and appellants continued paying rent at the former rate through December 1987. During that period of time, appellee accepted the amount tendered each month. Appellee never notified appellants of any deficiencies or that she considered the lease breached until she sent the notice of termination on January 13, 1988, which stated that appellants were in default under the written terms of the lease agreement. The stated reasons for the default were as follows:
1. Payment of an incorrect amount of rent from July 20, 1987, through the date of the notice of termination and in July 1985 and August 1986;
2. Failure to provide annual reports of Western World's retail sales;
3. Failure to pay ad valorem taxes as required by article 10 of the lease; and

*600 4. Failure to provide certified copies of insurance policies.
The same day Dansby sent the notice of default, she sent Western World a reminder that the rent had increased because of an increase in the state sales tax. Western World agreed that they were technically in violation of the lease.[2] Western World, however, asserted as follows:
Two days after receiving the notice, appellants notified Dansby that they were able and willing to cure the deficiencies. As to the failure to submit the reports of retail sales, Western World notified Dansby that it would provide her with the reports, but added that the retail sales had never reached the threshold amount for triggering a rent increase. Similarly, Western World had at all times carried insurance coverage required by the lease and was ready and willing to provide Dansby with copies of the policies. Finally, Western World was ready to bring all arrearages up to date although the notice of termination had failed to request a specific amount.
With the possible exception of the first year, Dansby never provided appellants with a copy of the tax bill. Until the termination, she never asked for payment of the taxes. Instead, she consistently accepted the rent payments made by Western World and paid the taxes herself. Only after the taxes accumulated for five years did she allege that the tax non-payment supported termination.[3]
On March 14, 1988, Dansby filed a declaratory judgment action, seeking a determination of her right to terminate the lease and to possess the leased property. She also sought damages as a result of the unpaid rent and taxes. A nonjury trial was held on July 20, 1989, before Judge Hal S. McClamma. Questions considered at that time were whether the notice of termination by the landlord was valid, and whether there was a valid description of the property in the lease agreement. On August 25, 1989, Judge McClamma signed a final declaratory judgment, holding that the lease agreement was null, void, and unenforceable. In so concluding, the trial court stated that it found by clear and convincing evidence that "it is impossible to determine the property boundaries actually described by the words `2309 Apalachee Parkway'." An amended final declaratory judgment was rendered August 31, 1989.
On appeal of the August 31 order, this court found that no ambiguity existed in the lease and option agreement, and held that the trial court erred by declaring the lease null and void. No other issues were addressed in the appellate opinion. The case was reversed and remanded for parol evidence to be received to determine the intent of the parties and to overcome any latent ambiguity regarding the extent of the parcel intended to be conveyed. See Western World, Inc. v. Dansby, 566 So.2d 866 (Fla. 1st DCA 1990). On February 7, 1991, the lower court entered its amended final judgment which was also appealed to this court. That appeal was dismissed on the grounds that the amended final judgment did not constitute a final order.
The second amended final judgment, dated September 11, 1991, is presently being appealed. As to that judgment, the lower court reviewed all the evidence which had been presented previously. In that judgment, the trial court stated the following:
The Court finds, based upon the evidence submitted at trial and argument of counsel, that the Lease Agreement between the parties dated July 20, 1983, ("the lease"), was validly terminated in light of the Defendants' default in performance of their obligations under the lease. The common law rules of waiver and estoppel do not apply where the parties have contracted for termination of the lease upon an event of default and their contract specifies that waiver of one condition or *601 covenant of the lease does not constitute a waiver of any further condition or covenant.
The appellants argue that this portion of the judgment is in error as Dansby's behavior constituted a waiver as to each breach allegedly committed by appellants. Appellee argues that the trial court was correct in holding that the common law rule of waiver was inapplicable in light of the antiwaiver language in the contract.
In Philpot v. Bouchelle, 411 So.2d 1341 (Fla. 1st DCA 1982), this court reversed the trial court and ordered a directed verdict for the lessor where the lessee was in default on its rent, but wished to exercise the option to purchase. The lessee in Philpot testified that he had substantially accomplished all the conditions of the lease and the option. The lessee, however, admitted that his rent payments and the payment on a required note had been late, but testified that the lessor had accepted the late rentals "graciously." There, this court held the lessor had not waived, by acceptance of tardy rental payments, the conditions necessary to the lessee's exercise of the option to purchase where the lease/option agreement provided as follows:
The rights of the lessor under the foregoing shall be cumulative and the failure on the part of the lessor to exercise properly any rights given hereunder shall not operate to forfeit any of the said rights.
Philpot, 411 So.2d at 1343. In Eskridge v. Macklevy, 468 So.2d 337 (Fla. 1st DCA 1985), rev. denied, 478 So.2d 54 (Fla. 1985), this court reaffirmed Philpot, upholding a very explicit antiwaiver provision contained in a lease/option agreement for the benefit of the landlord. In Eskridge, the lease unambiguously provided that receipt of rent with knowledge of a breach would not be deemed a waiver of that breach, and that no waiver would be deemed made unless expressed in writing and signed by the landlord. Eskridge, supra at 339. There, this court found that the option to purchase terminated as a matter of law upon the breach by lessee of two of the covenants contained in the lease agreement, and that based on the antiwaiver provision, the landlord had not waived its right to terminate. Id. at 339.
This court, in Philpot, based its reversal on the waiver language reviewed by a California court in Karbelnig v. Brothwell, 244 Cal. App.2d 333, 53 Cal. Rptr. 335 (2nd Dist. 1966). The waiver language reviewed in Karbelnig was found to be "tantamount to a relinquishment of the right of the lessee to assert a waiver or estoppel absent an express waiver on the part of the lessor." The waiver reviewed by the California court provides as follows:
A waiver by lessor of any breach of term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of rent hereunder by lessor shall not be deemed to be a waiver of any preceding breach of lessee of any term, covenant or condition of this lease other than the failure of the lessee to pay the particular rental so accepted, regardless of lessor's knowledge of such preceding breach at the time of the acceptance of such rent.
Philpot, 411 So.2d at 1344, citing Karbelnig, supra. As previously stated, article 18 of the lease in the instant case provides as follows:
WAIVER: No waiver of any condition or covenant of this lease by landlord shall be deemed to imply or constitute a further waiver by landlord of any other condition or covenant of this lease. The rights and remedies created by this lease are cumulative and the use of one remedy shall not be taken to exclude or waive the right to the use of another.
Unlike the contractual antiwaiver language in Philpot, Eskridge, and Karbelnig, the contractual language in the instant case does not specify that certain types of behavior will not constitute a waiver. The language in this case only says that conduct which constitutes a waiver of one provision shall not constitute a "waiver by the landlord of any other condition or covenant." *602 Implicit in this language is that certain conduct may constitute a waiver of a particular condition or covenant. We, therefore, cannot agree with the trial court that the contractual language in the instant case operated to totally invalidate the common rule laws of waiver and estoppel.
In so determining, we are not unmindful that the lease between the parties provides (1) that the lease may be terminated upon the failure of the lessee to perform any condition or covenant, and (2) that the lease may be modified only by agreement in writing. We find that these are matters properly to be considered by the trial court in determining whether the conduct of the appellee specifically constituted a waiver of performance as to a particular covenant or condition of the lease.
We, therefore, reverse and remand for the trial court to consider the appellant's defense of waiver and to make the appropriate findings concerning this defense.
ZEHMER and BARFIELD, JJ., concur.
NOTES
[1] We would note, however, that the trial court's determination as to issue I on remand may call for reconsideration of the other issues.
[2] After the notice of termination was sent, appellants twice notified appellee of their intent to exercise the option to purchase the property.
[3] There also appeared to be a dispute between the parties concerning whether the lease included a rectangular parcel attached to the property where the Western World store was located, and whether appellants were responsible for paying property taxes on this piece of land.