**In re S & I INVESTMENTS, a Florida General Partnership, Debtor.**

**No. 08–26220–BKC–RBR.**

United States Bankruptcy Court,
S.D. Florida,
Broward Division.

June 17, 2009.

---

S & I Investments, a Florida General Partnership, pro se.

Chad P. Pugatch, Esq., Mark S. Roher, Esq., Ft. Lauderdale, FL, for Petitioning Creditor.

Eyal Berger, Ft. Lauderdale, FL, James H. Fierberg, Esq., Miami, FL, Leslie S. Osborne, Esq., Boca Raton, FL, for Trustee.

Denyse Heffner, Office of the U.S. Trustee, Miami, FL, U.S. Trustee.

### ORDER GRANTING TRUSTEE'S MOTION TO ASSUME LEASE

RAYMOND B. RAY, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on May 18, 2009 (the "Hearing") upon the Trustee's Motion to Assume Lease (the "Motion") [D.E. 95]. The Court deems the complaint filed in Adversary Proceeding No. 09–01474–RBR–A to constitute a responsive pleading with respect to the Motion. The Court, having heard from counsel, reviewed the contents of the case file and being otherwise duly informed, makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

This case was commenced by the filing of an involuntary petition (the "Involuntary Petition") [D.E. 1] under chapter 11 of the Bankruptcy Code on October 29, 2009 (the "Petition Date"). The Involuntary Petition was filed by Stephanie Richmond, a 50% owner of the Debtor. Sisters Stephanie Richmond and Ilene Richmond (the "Richmonds") own the Debtor in equal shares. On January 7, 2009, the Court entered an order for relief in the case [D.E. 36]. On February 6, 2009, the Court appointed Leslie S. Osborne as the chapter 11 trustee [D.E. 63]. On February 18, 2009, the Debtor filed its schedules [D.E. 75]. The lease that is the subject of the Motion is reflected as an asset on Schedule B and as an Executory Contract in Unexpired Lease on Schedule G. The Trustee filed the Motion [D.E. 95] on April 23, 2009.

On April 27, 2009, Lori D. Ritenour and Steven G. Ritenour as co-trustees of the Lori D. Ritenour and Steven G. Ritenour Living Trust U/A (the "Ritenour Trust"), Lorraine Vreeland as successor trustee of the Harold S. Vreeland and Lorraine Vreeland Living Trust (the "Vreeland Trust"), and A. Lorraine Vreeland as trustee of the A. Lorraine Vreeland Revocable Living Trust (the "Vreeland Revocable Trust") (collectively the "non-Richmond Fee Owners"), whose interests constitute two-thirds (2/3) of the underlying fee in the Property, initiated an adversary proceeding (Adv.Pro. No. 09–01474–RBR–A) against the Trustee, the Richmonds, and Payless Flea Market, Inc. The complaint filed by the non-Richmond Fee Owners seeks, *inter alia*, a judgment that declares that the Debtor has no interest in a lease between Cornelia DeVeauz Vreeland and

Ilene Corporation due to the lack of a written, recorded assignment.

Other than cash and causes of action, if any, the sole material asset of the estate is its alleged interest in the above referenced ground lease (the "Lease") originally dated March 12, 1955 by and between Corenila DeVeaux Vreeland (the "Lessor") and Ilene Corporation, a Florida corporation. The term of the Lease was originally 49 years. On or about January 17, 1962, the Lease was amended to extend the total term of the Lease to 99 years, until 2054. The subject of the Lease is a parcel of commercial real estate located at 2941 East Las Olas Blvd and 136 Almond Avenue, Fort Lauderdale, Florida (the "Property"). The Property consists of a strip mall type development located very close to Fort Lauderdale Beach. According to the Trustee and Stephanie Richmond, the remaining term of the Lease has substantial value. The Court makes no finding on the value of the Lease, but acknowledges that it is within the business judgment of the Trustee to seek Court approval to assume the lease.

The Lease provides for rental payments to be increased periodically based upon a formula tied to the Consumer Price Index. The non-Richmond Fee Owners allege that the increased rental payments have never been made.

On or about April 10, 1991, the interest of Ilene Corporation was assigned of record to Ilene Richmond and Stephanie Richmond, individually, in accordance with the provisions of Article VII of the Lease. At some point prior to 1991, a decision was made to operate the leasehold interest through a Florida general partnership, and the Richmonds created the Debtor. The Richmonds have always been the sole equal partners of the Debtor. Subsequent to April 10, 1991, the Richmonds contributed their leasehold interests to the Debtor; however, no formal assignment of the leasehold interests to the Debtor was ever written or recorded.

At the Hearing, the Trustee introduced a document called Business Property Lease, dated August 24, 1995, between the Debtor and Payless FleaMarket (the "Payless Sublease"). The exhibit was acknowledged by the Trustee and Stephanie Richmond to be incomplete, but the Court was advised that it was only being introduced to demonstrate that as early as August 1995 the Debtor acted consistently with the position that it was the lessee under the Lease. The Court accepts the Payless Sublease for that sole evidentiary purpose. The Trustee also introduced various bank statements and cancelled checks of the Debtor that show payments were tended to the non-Richmond Fee Owners, or their predecessors in interest, since at least June 1997. The copies of the checks introduced by the Trustee do not bear any restrictive endorsement of any kind. Except as set forth in the next paragraph, the checks were consistently accepted, endorsed (without restriction) and negotiated by the non-Richmond Fee Owners and their predecessors in interest.

Beginning in late 2007, Lori D. Ritenour and Steven G. Ritenour, as co-trustees of the Ritenour Trust, appear to have ceased accepting rent checks from the Debtor. It appears from testimony at the Hearing that A. Lorraine Vreeland, as trustee of the Vreeland Revocable Trust, continued accepting, endorsing, and negotiating rent checks until the Petition Date. Ilene Richmond has never refused rent payments.[1]

The Richmonds have consistently had joint operational control of the Debtor

---

**1.** Ilene Richmond through her interest in the Ilene Richmond Living Trust owns the remaining one-third (1/3) interest in the underlying fee.

through the date of the appointment of the Trustee. At the Hearing, counsel for Ilene Richmond appeared and advised the Court that Ilene Richmond supports the Motion.

Stephanie Richmond was the sole testifying witness at the Hearing. The Court having listened to her testimony under oath, as well as her cross-examination, and having had the opportunity to review her candor and demeanor, finds her testimony to be truthful and reliable.

The non-Richmond Fee Owners did not introduce any documents into evidence or call any witnesses.

## CONCLUSIONS OF LAW

The issues before the Court are: (1) whether the non-Richmond Fee Owners waived the requirements for assignment set out in Article VII of the Lease, and (2) whether the anti-waiver provision in Article XVII (A) of the Lease would prevent any such waiver.

■ Under 11 U.S.C. § 541(a)(1), "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate. This section is interpreted broadly. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Builders Transport, Inc.*, 471 F.3d 1178 (11th Cir.2006).

■ Accordingly, the Debtor's interest in the unexpired 45 year term of the Lease is property of the estate, which the Trustee may assume or reject under 11 U.S.C. § 365 if the Debtor was a lessee at the Petition Date. *See In re Key Largo Watersports, Inc.*, 377 B.R. 738, 741 (Bankr. S.D.Fla.2007); *In re Yanks*, 39 B.R. 908 (Bankr.S.D.Fla.1984).

■ Property interests in bankruptcy are created and defined by state law.

*Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), *In re Porterfield*, 331 B.R. 480 (Bankr.S.D.Fla.2005).

■ Under Florida law, a "lessor's failure to enforce the provisions of a lease prevents the lessor from subsequently enforcing those provisions." *In re Boogaart of Florida, Inc.*, 17 B.R. 480, 485 (Bankr. S.D.Fla.1981). Thus, a waived lease provision is effectively stricken from the lease. *Id.*

■ Florida law defines a waiver as either an intentional or voluntary relinquishment of a known right, or conduct giving rise to an inference of a relinquishment of a known right. *Sentry Ins. v. Brown*, 424 So.2d 780, 784 (Fla. 1st DCA 1982). Waiver requires the existence at the time of the alleged waiver of a right which may be waived, actual or constructive knowledge of that right, and the intention to relinquish that right. *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982). The doctrine of waiver holds that a party may waive a covenant of a contract for whose benefit it is inserted. *In re Marineland Ocean Resorts, Inc.*, 242 B.R. 748, 757 (Bankr.M.D.Fla.1999). Waiver may be express or implied from conduct. *Id.* For waiver to be implied from conduct, the acts, conduct or circumstances relied upon to show waiver must make out a clear case. *Fireman's Fund Ins. Co. v. Vogel*, 195 So.2d 20, 24 (Fla. 2nd DCA 1967). Determination of a waiver is a factual inquiry for the trier of fact. *Matter of Garfinkle*, 672 at 1348.

■ Article VII of the Lease provides that a valid assignment must be recorded in the Office of the Circuit Court in and for Broward, County, Florida, and for the lessee to provide additional documentation to the lessor (the "Assignment Requirements"). Such a provision is typically for the benefit of the original lessor to

assure that the financial *bona fides* of the proposed assignee are established. Stephanie Richmond and Ilene Richmond did not comply with the Assignment Requirements when they assigned their interests to the Debtor.

However, the course of dealing between the Debtor and the non-Richmond Fee Owners since at least 1997 demonstrably indicates that the non-Richmond Fee Owners knew of the role of the Debtor in the Lease. Here, given the long-term acceptance of performance from the Debtor without protest, the non-Richmond Fee Owners engaged in a course of conduct that was reasonably susceptible of a good faith construction by the Debtor that the unrecorded assignment had been accepted and the condition waived. For nearly twelve (12) years, the non-Richmond Fee Owners accepted payments and had knowledge of the operation of the Property by the Debtor. *See Moskos v. Hand,* 247 So.2d 795, 796 (Fla. 4th DCA 1971) (holding that a lessor is estopped to assert a forfeiture for a breach of condition of a lease, or it waives the right to such forfeiture, where after the breach, he accepts rent from the tenant with full notice thereof). By accepting rent from the Debtor and only the Debtor from at least 1997, there is a reasonable basis to conclude that the non-Richmond Fee Owners knew that they were dealing with the Debtor from that time. Given the above, the non-Richmond Fee Owners waived the Assignment Requirements set out in Article VII of the Lease.

 The Lease also contains an "anti-waiver" provision. Article XVII (A) of the Lease states: "It is covenated and agreed that no waiver or breach of any of the covenants contained (sic) shall be construed to be a waiver of any succeeding breach of the same covenant."

 While the Court of Appeals for the Eleventh Circuit generally recognizes that anti-waiver provisions can be enforceable and have been upheld by Florida courts, such recognition is not without limitation. *See MCA Television Ltd. v. Public Interest Corp.,* 171 F.3d 1265, 1270 (11th Cir.1999); *Western World, Inc. v. Dansby,* 603 So.2d 597, 601 (Fla. 1st DCA 1992). An examination of the specific language contained in the particular anti-waiver provision is required. *See Dansby,* 603 So.2d at 601. In *Dansby,* the Court found that an anti-waiver provision, which had very similar language to the provision in this Lease, did not prevent a waiver, because the language did not specifically state that certain types of behavior did not constitute a waiver. *Id.* By contrast in *Philpot v. Bouchelle,* the court upheld an anti-waiver provision because it determined that the parties had specifically agreed that acceptance of late rental payments would not constitute a waiver of the lessor's rights. 411 So.2d 1341, 1344–1345 (Fla. 1st DCA 1982). The difference in the anti-waiver provisions in *Philpot* and *Dansby* lie in the specificity of the behavior that would or would not constitute a waiver. *See Philpot,* 411 at 1344–1345; *Dansby,* 603 at 601.

Here, the Debtor and the non-Richmond Fee Owners did not specifically agree that an assignment not in compliance with the Assignment Requirements would prevent a waiver. Thus, the anti-waiver provisions of the Lease are not enforceable in that context.

For all the foregoing reasons, it is **ORDERED** that

1. The Motion [D.E. 95] is **GRANTED.** The Court will set a time and date for an evidentiary hearing to determine the amount of post-petition rental payments due under the Lease and the cure amount due in connection with the as-

sumption of the Lease pursuant to 11 U.S.C. Section 365.

2. The Court will enter a separate Order dismissing the Adversary Proceeding.