On May 27, 1987, Donald Parmer leased a funeral home chapel and lot from the appellee, Taylor Hodge, Sr. The lease specifically allowed the lessee to sub-let or assign the lease. Two days later, on May 29, 1987, Parmer sub-leased the property to *Page 170 
Magnolia Funeral Homes of Mobile, Inc., through its president Carl Lynaum. On March 10, 1988, Parmer assigned the May 27, 1987, lease to Lynaum Funeral Home, Inc., through its president Carl Lynaum. The assignment was made with Hodge's consent, although the terms of the lease did not require the lessor's consent.
Under the terms of the lease, the $3,000 rent was due on the first day of each month. The lease term was for 12 months, beginning June 1, 1987, with an option for the lessee to renew at the end of each 12-month period for up to nine years. The lease contained the following language:
 "DEFAULT: Upon the happening of any one or more of the events expressed below . . . (which said event shall separately and severally constitute a default hereunder at lessor's [Hodge's] option), the lessor shall have the right at the option of the lessor to: (1) annul and terminate this lease, and thereupon re-enter and re-let said premises from time to time, as agents of lessee, and such re-entry and re-letting shall not discharge the lessee from liability or obligation hereunder, except that net rents . . . collected as a result of such re-letting shall be a credit on lessee's liability for rents under the terms of this lease. Nothing herein, however, shall be construed to require the lessor to re-enter and re-let in such event. Nor shall anything herein be construed to postpone the right of the lessor to sue for rents, whether matured by acceleration or otherwise, but on the contrary, the lessor is hereby given the right to demand, collect and/or sue therefor any time after default.
 "(a) In the event the Lessee should fail to pay any one or more of said installments of rent as and when the same become due, or fail to pay on demand any amount due lessor and secured as additional rent hereunder.
". . . .
 "The receipt by the lessor of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by the Lessor of any such provision hereof shall be deemed to have been made unless expressed in writing, and signed by the Lessor, or Lessor's agent."
(Emphasis added.)
On August 22, 1989, Hodge brought the present unlawful detainer action alleging that Lynaum was in default of the lease because of nonpayment of rent. Hodge later amended his complaint to include a claim for damages for the use and possession of the premises and for the cost of repairs to the air conditioning system and the roof of the leased building. This case was tried without a jury and the evidence was presented ore tenus; on February 20, 1990, the court awarded Hodge possession of the premises and awarded damages. We affirm.
Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's findings of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v. Ames,514 So.2d 877, 878 (Ala. 1987); Cougar Mining Co. v. Mineral Land Mining Consultants, Inc., 392 So.2d 1177 (Ala. 1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Gaston, supra; Smith v. Style Advertising, Inc.,470 So.2d 1194 (Ala. 1985); League v. McDonald, 355 So.2d 695
(Ala. 1978).
Lynaum argues that Hodge was estopped from terminating the lease due to late payments because Hodge had accepted late payments in the past. At the hearing, Lynaum testified that he was aware that the lease did not provide any grace period for late rental payments. Lynaum also testified that he knew that the lease preserved Hodge's right to terminate the lease even if Hodge had accepted the rental payments late. According to Lynaum's own testimony, he had paid the rent late on several occasions and had often written checks with insufficient funds available to honor the amount of the check.
The mere fact that the lessor accepted some overdue rent payments does not *Page 171 
waive his right to declare default where that right has been expressly reserved. USA Petroleum Corp. v. Jopat BuildingCorp., 343 So.2d 501 (Ala. 1977). The lease, quoted above, expressly reserved Hodge's right to accept late payments of rent without waiving his right to declare default. Therefore, we can not say that the trial court's holding that Lynaum was in default and that Hodge was entitled to possession was clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston,supra; Cougar Mining Co., supra.
The trial court also awarded Hodge damages for the cost of repairing an air conditioning unit on the leased premises. Lynaum argues that this award was erroneous for two reasons. First, Lynaum states that Parmer was actually the owner of Magnolia Funeral Homes, and that Lynaum was merely acting as a manager when the repairs took place. Second, Lynaum argues that Hodge did not give him a five-day notice before declaring a default, as Lynaum says Hodge was required to do under the lease agreement.
The record reveals that the repairs were made on June 15, 1987. On that date, Parmer was the sub-lessor of the premises and Magnolia Funeral Homes, through its president Carl Lynaum, was the sub-lessee. As president, Lynaum signed the invoice authorizing the repair of the air conditioner. On March 10, 1988, Parmer assigned his interest in the May 27, 1987, lease to Lynaum Funeral Home, through its president Carl Lynaum, as allowed in the lease. Contained in that assignment was the following:
 "Assignor [Parmer] hereby assigns and transfers to the assignee [Lynaum] . . . all of assignor's right, title, and interest in and to the lease . . . and the Assignee hereby agrees to and does accept the assignment and in addition expressly assumes and agrees to keep, perform, and fulfill all the terms, covenants, conditions, and obligations required to be kept, including the making of all payments due to or payable on behalf of the Lessee under said lease when due and payable."
(Emphasis added.)
The lease agreement provided that the lessee was responsible for making any repairs to any equipment on the premises and that if the lessee failed to make such repairs, the cost of the repairs was payable to the lessor upon demand. Hodge testified that he paid the repair cost because Lynaum had not paid it and that he then demanded payment from Lynaum. Both Hodge and Lynaum testified that Lynaum had not paid the repair costs.
The assignment agreement between Parmer and Lynaum expressly provided that Lynaum assumed responsibility for all payments that were due the lessor, Hodge, under the lease. The lease provided that the lessee was liable for repairs and maintenance. Therefore, Lynaum assumed responsibility for the cost of repairs to the air conditioning unit.
We also find Lynaum's argument that he did not receive five days' notice of his failure to pay the cost of these repairs to be without merit. This argument is apparently based on the wording of a proposed lease Hodge's lawyer sent to Lynaum on June 29, 1989, for him to execute if he wanted to continue to occupy the premises. This proposed lease differs from the May 27, 1987, lease in that it contained no renewal option and would have required the lessor to give the lessee five days' notice before acting upon a default. However, Lynaum never signed the proposed lease sent to him on June 29, 1989. Consequently, it is of no effect.
The lease executed between Hodge and Parmer on May 27, 1987, does not require the lessor to give the lessee five days' notice before acting upon any default in the lessee's performance. It was this lease that Parmer assigned to Lynaum on March 10, 1988, and the terms of this lease govern the transactions before us. Therefore, Parmer was not required to give Lynaum five days' notice before acting on Lynaum's default in not paying for the repairs. *Page 172 
Accordingly, the trial court did not err in holding that Lynaum is liable for the cost of the repairs. Its judgment is affirmed.
AFFIRMED
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.