MADDOX, Justice.
The issue in this case concerns the rights of a judgment creditor who sought a garnishment against crop proceeds payable to the debtor/tenant versus the rights of a landlord who sought to exercise his statutory lien on the proceeds. After an ore tenus hearing, the trial court held that the crops had been sold by the debtor/tenant with the consent of the landlord and with no agreement that any rent should be paid out of the proceeds. That being the case, the trial court ruled that there was no enforceable lien and allowed the garnishment proceedings to continue. We affirm.
John Nolen testified that he and Carlton Allison had engaged in farming operations together for a number of years. Their practice was for Nolen to provide the credit, equipment, materials, and part of the land, and for Allison to provide most of the labor. The majority of the land farmed was rented from various landowners. Allison contracted with the landowners from whom they rented most of the land, and Allison dealt with the buyers of their crops, including Continental Grain. There was no written agreement between Nolen and Allison and, according to Nolen, after payment of expenses, he and Allison would divide any profits.
On January 2, 1991, The Great Combine, Inc., recovered a judgment for $15,826.69 against Allison in the Circuit Court of Marshall County, Alabama. Great Combine’s suit had been based on Allison’s failure to deliver soybeans in the fall of an earlier year under the terms of a written contract entered into between Allison and Great Combine. Allison did not appeal that judgment, nor did he satisfy it.
On October 17, 1991, Great Combine caused the clerk to issue a writ of garnishment to Continental Grain Company based on the unsatisfied judgment against Allison. On October 22, 1991, Continental Grain filed an answer, which it amended on October 28, 1991, stating that it possessed “property or money belonging to the Defendant” Allison consisting of seven truckloads of soybeans having a value of $13,-447.96, which it was “holding subject to orders of the Court.” Allison filed no response to the garnishment. However, after the writ of garnishment attached, Allison canceled delivery of the remaining soybeans, approximately one-half of the total amount, due under the contract executed in his name alone. Allison then executed an assignment of the proceeds to Merchants Bank. After this assignment, Allison continued to deliver soybeans to Continental Grain, for which Continental Grain paid Merchants Bank $19,363.91.
On November 14, 1991, John Nolen filed a verified claim contesting the writ of garnishment, asserting that he “owned ... the soybeans or their proceeds ... because the soybeans were grown on land owned by [Nolen]” and that he had “advanced the money for fertilizer used to grow the soybeans” for which fertilizer he presently owed Marshall Co-op the sum of $13,656.03. In his pleadings, Nolen, who owned individually and with his brother approximately 10% of the land planted by him and Allison, asserted a landlord’s lien under § 35-9-30, *1280 Ala.Gode 1975,[1] on the soybean proceeds. At the subsequent hearing, Nolen sought to extend the basis of his claim by asserting an additional lien on any soybeans grown on rented land by Allison as a tenant in common under § 35-11-350, Ala. Code 1975.[2]
At the December 17, 1991, ore tenus hearing on his claim, Nolen testified that he and Allison had been friends for many years and had been farming together since 1974. He also stated that he was aware of Allison’s past problems with creditors. On direct examination, Nolen stated the following:
“A. Well, I think its been brought out pretty well, Mr. Allison has a hard time getting credit.
“Q. Are you aware of judgments that he has against him?
“A. Yes, sir, I am aware of 'em.
“Q. And [there are] judgments other than The Great Combine aren’t there? “A. Yes, sir.
“Q. And are y’all doing this farming [arrangement] to try to keep these creditors from getting any money?
“A. Yes, sir.”
Nolen also testified that, after the writ of garnishment had been served and he and Allison had become aware that the proceeds from their soybeans had been stopped, with Nolen’s permission Allison assigned the balance of the proceeds of the unfulfilled soybean contract to Merchants Bank and then delivered approximately $20,000 worth of soybeans to Continental Grain. At the hearing, Allison testified that he did not personally owe Merchants Bank anything and that he assigned the proceeds of the contract to the Bank at Nolen’s request with the understanding that the money would be applied to a debt Nolen had incurred four years earlier.
In its judgment, the trial court acknowledged that, pursuant to §§ 35-9-30 and 35-9-37, a landlord-tenant relationship existed between Nolen and Allison,[3] but found that the soybeans had been sold by Allison with Nolen’s consent and without an agreement that those proceeds be used for the payment of the debts in question. As the court stated in its judgment:
“The testimony and evidence further shows that the property in issue was sold *1281 by [Allison] (tenant), with the consent of the claimant [Nolen] and there was no agreement that the rent lien should be paid out of the proceeds. (Johnson v. Pruitt, 239 Ala. 44, 194 So. 409 [1939].) In point, the garnishee [Continental Grain] had no knowledge that the claimant had a lien or had any claim of any nature to the proceeds from the sale of the property. The failure of this agreement prevents the claimant (landlord), from enforcing his lien.”
Thus, the court denied Nolen’s claim and allowed the garnishment proceedings to continue.
There is a presumption of correctness as to the trial court’s findings of fact when it hears evidence presented ore tenus; however, no presumption of correctness exists when the trial court improperly applies the law to the facts. Lynaum Funeral Home, Inc. v. Hodge, 576 So.2d 169 (Ala.1991). We find ample evidence to support the trial court’s judgment. In Johnson v. Pruitt, 239 Ala. 44, 47, 194 So. 409, 411 (1939), the Court stated:
“When the defendants purchased this cotton, if the landlord consented to the sale in advance, he cannot enforce his lien on the cotton thus purchased, nor on the proceeds, unless in giving his consent he stipulated that his rent lien should be paid out of the proceeds.... ”
In this case, Nolen was aware of Allison’s financial problems and of the existence of judgment creditors, yet knew and approved of Allison’s holding himself out to prospective buyers as the sole owner of the soybeans. The soybean sale contracts with Continental Grain at issue here were signed by Allison and contained his warranty of title. Nolen admitted that he allowed Allison to sell the soybeans to whomever Allison chose and at whatever price Allison determined. There was no agreement that any of the proceeds from the soybeans sold to Continental Grain were to be reserved as “rent” payable to Nolen. Given this arrangement, there is simply no way that Continental Grain could have been aware of any lien that Nolen could haye asserted against the proceeds at issue here.
Nolen has attempted to use the statutory agricultural liens in question not for any legitimate protection intended by the legislature, but to prevent any of Allison’s creditors from collecting their lawful debts. Nolen clearly consented to Allison’s treating the crops as his own separate property until after the proceeds had been attached from Continental Grain by Allison’s judgment creditor, Great Combine. As a result, Nolen has waived any lien. The judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.

.Section 35-9-30 states:
“A landlord has a lien, which is paramount to, and has preference over, all other liens, on the crop grown on rented lands for rent for the current year, and for advances made in money, or other thing of value, either by him directly, or by another at his instance or request for which he became legally bound or liable at or before the time such advances were made, for the sustenance or well-being of the tenant or his family, or for. preparing the ground for cultivation, or for cultivating, gathering, saving, handling or preparing the crop for market; and also on all articles advanced, and on all property purchased with money advanced or obtained by barter in exchange for articles advanced, for the aggregate price or value of such articles and property."
Also applicable in this case is § 35-9-37, which states:
"When one party furnishes the land and the other party furnishes the labor to cultivate it, with stipulations, express or implied, to divide the crop between them in certain proportions, the relation of landlord and tenant, with all its incidents, and to all intents and purposes, shall be held to exist between them; and the portion of the crop to which the party furnishing the land is entitled shall be held and treated as the rent of the land; and this shall be true whether or not by express agreement or by implication the party furnishing the land is to furnish all or a portion of the teams to cultivate it, all or a portion of the feed for the teams, all or a portion of the planting seed, all or a portion of the fertilizer to be used on the crop or pay for putting in marketable condition his proportion of the crop after the same has been harvested by the tenant."

. Section 35-11-350 states:
"Persons farming on-shares, or raising crops by joint contributions, in such manner as to make them tenants in common in such crops, or their assignees, shall each have a lien upon the interest of the other in such crops for any balance due for provisions, supplies, teams, materials, labor, services and money, or either, furnished to aid in cultivating and gathering such crops, under contract, or furnished when the interest of such crops requires it, in case of a failure of either to contribute the amount and means as agreed upon by the parties."

. While the trial court determined that Allison and Nolen had a landlord-tenant relationship governed by §§ 35-9-30 and 35-9-37, both parties agreed that the analysis would have been unaffected had the trial court held Allison and Nolen to be tenants in common pursuant to § 35-11-350.