[Civ. No. 28735.  Second Dist., Div. Three.  Aug. 18, 1966.]

BEN A. KARBELNIG et al., Plaintiffs and Appellants, v. LESTER LEROY BROTHWELL et al., Defendants and Respondents.

, Gyler & Gottlieb and Emanuel Gyler for Plaintiffs and Appellants.

Alexander H. Schullman and Herbert E. Selwyn for Defendants and Respondents.

FRAMPTON, J. pro tem.*—This is an appeal from a judgment rendered in an action seeking declaratory relief.

The plaintiffs were doing business under the fictitious name and style of Medi-Sanco and were the successors in interest and assignees of a general partnership doing business under the fictitious name and style of Developments Unlimited.

On December 28, 1960, the plaintiffs' assignor, hereinafter referred to as the lessor, entered into a *written lease contract* with the defendants Lester Leroy Brothwell and Ruth V. Brothwell, hereinafter referred to as the lessees, for the rental of the premises situated at number 11135 West Hondo Parkway in the city of Temple City, for a term of fifteen years commencing on April 1, 1961, for a total rental of $612,000.

The lease contract provided in paragraph 22 thereof as follows: "ASSIGNMENT OR SUBLETTING. Lessee shall not assign this lease, or any interest therein, and shall not sublet the said premises or any part thereof, or any right or privilege appurtenant thereto, or suffer any other person (the agents and servants of Lessee excepted) to occupy or use the said

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

premises, or any portion thereof, without the written consent of Lessor first had and obtained, and a consent to one assignment, subletting, occupation, or use by another person shall not be deemed to be a consent to any subsequent assignment, subletting, occupation, or use by another person. Any such assignment or subletting without such consent shall be void, and shall, at the option of Lessor, terminate this lease. This lease shall not, nor shall any interest therein, be assignable, as to the interest of Lessee, by operation of law, without the written consent of Lessor. Any change in the ownership of 50% or more of the capital stock of Lessee shall be deemed an assignment prohibited hereby.''

Paragraph 27 of the lease contract provided as follows: ''WAIVER. The waiver by Lessor of any breach of any term, covenant, or condition herein contained shall not be deemed to be a waiver of such term, covenant, or condition or any subsequent breach of the same or any other term, covenant, or condition herein contained. The subsequent acceptance of rent hereunder by Lessor shall not be deemed to be a waiver of any preceding breach by Lessee of any term, covenant, or condition of this lease, other than the failure of Lessee to pay the particular rental so accepted, regardless of Lessor's knowledge of such preceding breach at the time of acceptance of such rent.''

At the pretrial hearing it was agreed, amongst other things, and incorporated in the pretrial order, that subsequent to the acquisition of the real property by the plaintiffs and on or about December 10, 1962, the lessee informed the plaintiffs that they desired an assignment of their interest as lessees in the premises to the defendants Dr. I. Urbach (named in the title as Burbach) and O. L. Holmes and that the plaintiffs immediately thereafter notified the lessees that they would not consent to the assignment. It was further agreed at pretrial and incorporated in the pretrial order that on or about January 15, 1963, the defendants Brothwell sold 49 percent of their interest in the sanitarium, which was being operated by the lessees upon the leased premises, to the defendants Urbach and Holmes; that the defendants Brothwell and Urbach and Holmes had entered into a limited partnership agreement in connection with the acquisition of the 49 percent interest and that such agreement was on record in the office of the County Recorder of Los Angeles County; that the four above named defendants had signed a certificate to do business under the fictitious name and style of Temple Aire Sanitarium, had

advertised the same and had filed it in the office of the County Clerk of Los Angeles County, to be effective as of January 15, 1963; that the plaintiffs had regularly received the rent set forth in the lease contract from the defendants but that the plaintiffs had informed the defendants that the acceptance of the rental payments was in no way to be construed as an acceptance or waiver of the alleged violation of the lease contract.

The transcript of the oral proceedings had at the trial disclosed that the plaintiff Karbelnig, who appeared to act as the spokesman and agent of the other plaintiffs, first offered to purchase the interest of the Brothwells in the subject property thinking that they owned it. After learning that the Brothwells were lessees, Karbelnig offered to purchase their leasehold interest but these negotiations failed. After the negotiations with the Brothwells failed the plaintiffs purchased the property from the owner and lessor, subject to the lease.

Upon the close of the escrow relating to the purchase of the property, about November 10, 1962, Mr. Young, of Developments Unlimited, and Karbelnig called upon Mr. Brothwell and informed him that Medi-Sanco was the new owner of the property. Brothwell stated that he was pleased that they had taken over but he really did not care because he had sold his interest to someone else; he did not say to whom he had sold.

On December 10, 1962, a letter was sent by counsel for the Brothwells to Medi-Sanco and Karbelnig, enclosing a written consent to the assignment of the lease and requesting that the assignment be executed. The written consent of assignment provided that the defendants Urbach and Holmes were to assume all of the obligations under the lease and it further provided that the Brothwells should remain liable under its terms. The written assignment and request were accompanied by financial statements of both Holmes and Urbach.

Karbelnig arranged for a meeting in his office on December 27, 1962. On this date, Holmes, Urbach, the attorney for the Brothwells, and Mallett, a real estate broker, met with Karbelnig and a discussion was had wherein Karbelnig was asked to sign the consent to the transfer of the lease. Karbelnig refused to sign the consent whereupon ''They said they were going to go ahead without it, without our consent, and just go right ahead and make the assignment.''

On February 14, 1963, Karbelnig visited the sanitarium premises where he met Holmes. Karbelnig asked Holmes where

Brothwell was and what was going on, whereupon Holmes advised him that Brothwell was out and that Holmes had purchased a 50 percent interest in the facility.

On January 4, 1963, Karbelnig addressed a letter to Brothwell in which he stated, in substance, that he had conferred with his associates and their attorney and that in reference to paragraph 22 of the lease "We wish to place you on notice that any agreements that you execute will constitute a breach of the lease, and we will be forced to take action."

On February 18, 1963, counsel for the plaintiffs sent a letter addressed to the Temple Aire Convalescent Sanitarium stating, in substance, that Karbelnig, on behalf of Medi-Sanco, had advised them that Holmes had stated to Karbelnig that the former was acquiring a 50 percent interest in the sanitarium. The letter directed attention to paragraph 22 of the lease and stated, in substance, that any such change, without first securing the written consent of Medi-Sanco, would be void. The letter continued that "if you pursue such assigning . . . we will be obligated to advise you of the fact that such actions have constituted the termination of the Lease with the Lessor and we will then proceed to secure the premises from you."

On February 22, 1963, counsel for the defendants, in response to the letter of February 18, 1963, wrote to plaintiffs' counsel advising them that Holmes had only acquired a 49 percent interest in the sanitarium, and stating further that "This is strictly in accord with Paragraph XXII of said Lease."

Commencing with the month of March 1963 and down to the time of the trial (March 23, 1964), the rental under the terms of the lease, in the sum of $3,400 per month, was paid and was accepted by the plaintiffs. The rent was paid each month by a check signed by the defendant Holmes. Upon the receipt of each check the plaintiffs wrote a letter addressed to Mr. Brothwell and signed by Karbelnig stating, except for the month shown: "Dear Mr. Brothwell: We (Medi-Sanco) are accepting a check for $3,400.00 which is the rental payment for March in your behalf pursuant to your lease.

"The acceptance of said rental payment is in no way to be construed as an acceptance or waiver to an assignment or transfer or sub-leasing of the lease which we have with you."

The plaintiffs filed their action on April 10, 1963. The complaint bears the caption "COMPLAINT FOR DECLARATORY

RELIEF.'' The allegations thereof set forth the relationship of the parties, the provisions of the lease and in particular those provisions against the assignment of it, the request for a consent to assignment and the refusal of such a consent. It is there alleged that the defendant lessees have attempted to assign a 49 percent interest in and to the sanitarium and the lease contract to the defendant Holmes and have attempted other similar assignments, and that such attempted assignments constitute a breach of the lease contract. The complaint further alleges that the plaintiffs have elected to terminate and void the lease contract in accordance with the provisions of paragraph 22 thereof, and have notified the defendants of their election; that the defendants claim that they have not breached the terms of the lease contract and that a controversy exists as to the interpretation of paragraph 22 thereof; that it is proper for the court to declare the respective rights of the parties and in particular as to whether the plaintiffs are entitled to declare a forfeiture of lessees' interest under the lease contract and to thereby be entitled to reclaim possession of the premises.

The prayer of the complaint seeks a judgment declaring that plaintiffs are entitled to a cancellation and forfeiture of the lease contract and are entitled to repossess the premises. The prayer also seeks a judgment ordering the defendants to account to the plaintiffs for all benefits derived from the operation of the business for the period commencing on March 4, 1963, and continuing until the time of the entry of judgment.

The pretrial order set up the defense of waiver by the plaintiffs of those provisions of the lease against assignment without consent by the acceptance of rent by the lessor after knowledge of the breach.

At the trial the defendants placed in evidence an agreement, dated January 15, 1963, which disclosed the formation of a limited partnership between Urbach and Holmes as general partners on the one hand and the Brothwells as limited partners on the other hand, whereby the Brothwells sold a 49 percent interest in the sanitarium, including their leasehold interest in the subject property, to Urbach and Holmes, each to have a 24½ percent interest. The limited partnership agreement provided that the general partners should have the exclusive management and control of the sanitarium business to be conducted upon the leased premises.

The defendants also introduced in evidence at the trial a certified copy of a Certificate of Limited Partnership, bearing

the date of January 15, 1963, the original of which had been filed in the office of the county recorder on March 29, 1963. This document shows that Golden Days Facilities, Inc. is the general partner and the Brothwells are the limited partners. It also shows that the Brothwells had contributed to the assets of the limited partnership, amongst other things, the leasehold on the premises where they had previously conducted a sanitarium business under the fictitious name of Temple Aire Convalescent Sanitarium.

The plaintiffs' position at the trial is disclosed by the following colloquy between the court and counsel for the plaintiffs:

"THE COURT: So your theory, then, is that you are, in effect, declaring a forfeiture by the filing of your action and, if you are successful in having the Court determine that there is an assignment and, therefore, a breach, that the Court, once having assumed jurisdiction in an equity action, can wrap up this thing in one ball of wax?

"MR. GYLER: We say if the Court finds that this does constitute an assignment—

"THE COURT: I could go further, rather than have a circuity of actions, and have you refile.

"MR. GYLER: Correct."

The court found that the lease contained a clause which prohibited its assignment without the consent of the lessor; that the lessees transferred the lease to the defendants Urbach and Holmes; that the lessor refused to consent to the transfer of the lease; that the lessor contended that the transference of the lease constituted a breach thereof and the defendants contended that such transference did not constitute a breach thereof, and that the plaintiffs instituted suit for declaratory relief and thereafter accepted rent from the lessees and that the defendants were advised by the plaintiffs that the acceptance of the rent would not constitute a waiver of the plaintiffs' rights pursuant to the terms of the lease.

In its conclusions of law the court held that the transfer of the lease constituted an assignment thereof; that the assignment was without the consent of the lessor and was thus a breach of the lease, and that the lessor's acceptance of the rent constituted a waiver of such breach. Judgment in favor of the defendants followed. The appeal is from this judgment.

The principal assignment of error is that the trial court erred in its determination that the plaintiffs had waived the breach of covenant against assignment of the lease by their

having accepted the monthly rental provided therein after having declared a forfeiture of the lease by the filing of the complaint.

The plaintiffs urge that there was a dispute between the plaintiffs and the defendants as to whether the defendants had in fact and in law violated the covenant of the lease against assignment, and that until it was determined by judgment in the declaratory relief action that the conduct of the defendants did constitute an assignment of the lease in violation of paragraph 22 thereof, the plaintiffs could not have had knowledge thereof and therefore could not have waived the right to a forfeiture of the lease by the acceptance of rent up to the time of judgment; that after the judgment declaring the assignment to be in violation of the provisions of the lease, the plaintiffs should then have the option to declare or not to declare the lease to be forfeited.

There is no doubt that the plaintiffs could have sought only, by their action in declaratory relief, to have it declared whether the conduct of the defendants amounted to an assignment of the lease in violation of paragraph 22 thereof, without seeking other relief. (Code Civ. Proc., § 1060; *Tolle* v. *Struve,* 124 Cal.App. 263 at p. 268 [12 P.2d 61].) However, the plaintiffs by their complaint and their representations at the trial did seek other relief in that they asked the trial court to declare the lease to be forfeited and asked that the defendants be compelled to account for any benefits derived from the operation of the business subsequent to March 4, 1963, although they stated to the trial court that April 10, 1963, the date upon which the complaint was filed, was to be considered as the date of their declaration of forfeiture. By their conduct, from the pleading stage to the conclusion of the trial, the plaintiffs induced the court to make a complete determination of the rights of both the lessor and the lessees under the terms of the lease and the assignment thereof, and this the court did.

Under the foregoing circumstances the court could properly determine whether there had been an assignment of the lease in violation of its terms, whether the leasehold interest had properly been declared forfeited by the lessor, whether there had been a waiver of the right to forfeit by the acceptance of rent by the lessor after knowledge of the breach of covenant and if a forfeiture was declared then to completely adjudicate the matter of damages, if any, by reason of the breach of covenant and the forfeiture which followed.

■ Waiver is the intentional relinquishment of a known right after knowledge of the facts. (*Myers* v. *Herskowitz,* 33 Cal.App. 581 at p. 584 [165 P. 1031] ; *Weintraub* v. *Weingart,* 98 Cal.App. 690 at p. 701 [277 P. 752].) ■ "It is settled that the violation by the lessee of a covenant against assignment of a lease does not *ipso facto* terminate the lease or render it void. The lessor has the option to declare a forfeiture of the lease or, ignoring the breach, to treat it as subsisting." (*Martin* v. *Auerbach,* 94 Cal.App.2d 222 at p. 225 [210 P.2d 321]. See *People* v. *Klopstack,* 24 Cal.2d 897 at p. 901 [151 P.2d 641].) ■ There is a presumption of an assignment which follows occupancy of the leased premises by one other than the lessee, especially when the occupant pays the rent and cost of maintenance. (*Weintraub* v. *Weingart, supra,* at p. 700.) ■ Since the prohibited assignment may result in a forfeiture, the condition will be construed strictly against the lessor. (2 Witkin, Summary of California Law (7th ed. 1960), Real Property, § 272, p. 1098.)

■ The usual lease contains a covenant or condition against assignment without the consent of the lessor. In such case an assignment is not void, but only voidable; the leasehold passes to the assignee, subject only to forfeiture by the lessor. ■ If the lessor accepts payments of rent from the assignee, even under a stipulation reserving the right to declare a forfeiture, the right is waived. (Rest., Property, § 421 ; *Group Property Inc.* v. *Bruce,* 113 Cal.App.2d 549 at p. 556 [248 P.2d 761] ; *Buchanan* v. *Banta,* 204 Cal. 73 at pp. 77, 78 [266 P.547] ; *Bedford Investment Co.* v. *Folb,* 79 Cal. App.2d 363 at p. 366 [180 P.2d 361].)

The California decisions holding that the acceptance of rent by the lessor, after knowledge on his part of a breach of covenant, may be held to constitute a waiver of such breach and an estoppel to assert a forfeiture of the lease, all involve lease contracts wherein there was no express agreement between the lessor and the lessee, such as is contained in paragraph 27 of the lease here under consideration, to the effect that the acceptance of the rent by the lessor after knowledge of a breach of covenant shall not be deemed a waiver of such breach.

It has been held that the lessor may not unilaterally, by the giving of a receipt for rent when received, accept the rent and thereby avoid a waiver of the breach of a covenant, by providing in the receipt that the rent is accepted " 'without prejudice to any of my rights under the lease of said premises.' "

(*Miller* v. *Reidy,* 85 Cal.App. 757 at p. 762 [260 P. 358].) This is in accord with the general rule. (32 Am.Jur., Landlord & Tenant, § 883, p. 749.)

The interpretation and application of a clause against waiver of a breach of covenant by the acceptance of rent by the lessor after knowledge of the breach has been before the courts in other jurisdictions. It has been said of such a clause that, ''Waiver is always a matter of intent and, while an intent to waive may be inferred from the acceptance of rent under certain circumstances, such an inference may be rebutted *and is rebutted* here by the express agreement between the parties that the rent was paid and accepted without prejudice. Such an agreement was incorporated in the leases. The fourth paragraph quoted provided that 'the receipt of rent with knowledge of any breach, shall not be deemed to be a waiver as to any breach of any covenant or condition herein contained.' Thus, notwithstanding knowledge of a breach of condition, the appellant might accept rent without being deemed to waive its right to terminate for such breach. [Citations.]'' (Italics added; *In re Wil-Low Cafeterias, Inc.* (2d Cir. 1938) 95 F.2d 306 at p. 309 [115 A.L.R. 1184]; see also *D'Anna* v. *Rupp* (Mo.App.) 32 S.W.2d 136; *Vintaloro* v. *Pappas,* 310 Ill. 115 [141 N.E. 377].) It has been held that the effect of such an agreement would be that after a default once occurred, the lease would become, in the absence of an estoppel, one terminable at the will of the lessor, and so long as he did not exercise his option to terminate it, it would continue in effect. (*Hoffman Wall Paper Co.* v. *City of Hartford* (1932) 142 Conn. 531 [159 A. 346 at p. 348].)

██ Here the lessor not only relied upon the express agreement in the contract of the lease against waiver of its right to assert a forfeiture for the acceptance of rent after knowledge of the breach of covenant prohibiting assignment of the lease without its written consent first obtained, but it also gave notice that its acceptance of the rent after the breach of covenant became known was not to be construed as a consent to the assignment of the lease or a waiver of its right to assert a forfeiture. Furthermore, the lessor, upon discovery of the breach of covenant, acted promptly in filing its cause of action wherein it sought a forfeiture of the lease contract.

The express agreement on the part of the lessees, which was binding upon their assignees, to the effect that the acceptance of rent by the lessor after knowledge of the breach of a covenant should not be deemed a waiver of such breach, is tanta-

mount to a relinqushment of the right of the lessees and their assignees, to assert a waiver of estoppel, unless there has been an express waiver on the part of the lessor of the right reserved, or there has been conduct on the part of the lessor, other than the acceptance of rent, upon which the lessees or their assignees could lawfully assert an estoppel to declare a forfeiture. The record is barren as to either an express waiver on the part of the lessor or conduct on its part, other than the acceptance of rent, upon which an estoppel could be asserted.

The court's conclusion that the lessor's acceptance of the rent paid by the defendants constituted a waiver of the breach of covenant against the assignment of the lease is without support in the record and is contrary to the law as applied to a lease contract of the character here under consideration.

The judgment is reversed.

Shinn, P. J., and Kaus, J., concurred.