**Sablan Enterprises, Inc.,**
Plaintiff/Appellee,
**v.**
**New Century, Inc.,**
Defendant/Appellant.
Appeal No. 95-020
Civil Action No. 94-1138
December 9, 1997

Argued and Submitted on December 6, 1996

Counsel for Appellant: Antonio M. Atalig, Saipan.

Counsel for Appellee: Michael A. White, Saipan.

BEFORE: MACK, WISEMAN, and LIZAMA, Special Judges.

LIZAMA, Special Judge:

New Century appeals from the June 9, 1995, Superior Court Order granting summary judgment in favor of Sablan Enterprises. We have jurisdiction pursuant to title 1, § 3102(a) of the Commonwealth Code. We affirm

## ISSUES PRESENTED AND STANDARDS OF REVIEW

New Century raises three issues for our review:

1. Whether the Superior Court erred in concluding that New Century failed to raise a material issue of fact as to the validity or applicability of the non-waiver clause of the lease agreement.
2. Whether the Superior Court erred in concluding that New Century failed to raise a material issue of fact as to any defective mailing of the Notice of Default.
3. Whether the Superior Court erred in concluding that New Century failed to raise a material issue of fact as to its counterclaim.[1]

We review an order granting summary judgment de novo. *Rios v. Marianas Pub. Land Corp.*, 3 N.M.I. 512, 518 (1993). We shall affirm the Superior Court's order granting summary judgment if we determine that as to the legal basis relied upon: (1) there is no genuine issue

of material fact; and (2) the trial court correctly applied the substantive law. *Id.*

## FACTS AND PROCEDURAL BACKGROUND

¶4 Sablan Enterprises owns a two-story commercial building in Chalan Kanoa, Saipan. On March 3, 1983, Sablan Enterprises and New Century entered into a fifteen year lease agreement for a portion of this building. The lease agreement provided for a monthly rental fee of two thousand dollars with a five percent increase every five years. Rent was to be paid by the fifteenth day of each month.

¶5 On September 13, 1994, a Notice of Default was sent by Sablan Enterprises to New Century. The thirty day period after notice, as set forth in the lease agreement, expired without New Century having cured its default. On October 24, 1994, Sablan Enterprises filed suit against New Century for forfeiture and termination of the lease agreement for nonpayment of rent. New Century counterclaimed that the parties had orally agreed to modify the terms of the payment of rent, and that it relied on the oral modification of the lease agreement.

¶6 On June 9, 1995, the Superior Court granted summary judgment in favor of Sablan Enterprises. New Century timely appealed.

## ANALYSIS

¶7 In the absence of written law or local customary law regarding landlord-tenant law, the rules of the common law, as expressed in the RESTATEMENTS OF LAW shall be applied. 7 CMC § 3401 (1992).

### A. Sablan Enterprises did not waive its right to forfeiture by continuing to accept rental payments

¶8 A tenant has an obligation to pay rent unless he is legally excused from doing so. RESTATEMENT (SECOND) OF PROPERTY (*Landlord and Tenant*) § 12.1 (1976). A landlord may waive his right to the prompt payment of rent by acting in a manner which leads the tenant to believe that a later date of payment than that specified in the lease is acceptable. RESTATEMENT (SECOND) OF PROPERTY (*Landlord and Tenant*) § 12.1, cmt. c (1976). However, a lease that provides for a non-waiver provision preserves the landlord's right to the payment of the rent on the due date. *Id.*[2] In this case the

---

[1] We will address this issue in conjunction with the applicability of the lease agreement's provision regarding written modifications.

[2] *Lynaum v. Funeral Home v. Hodge*, 576 So.2d 169, 170-71 (1991); *Giller Industries v. Hartley*, 644 S.W. 2d 183, 184 (Tex. Ct. App. 1982); *Karbelnig v. Brothwell*, 53 Cal. Rptr. 335, 340-41 (Cal. Dist. Ct. App. 1966). *See Dunbar House Auth. v.* 

lease specifically states:

> Acceptance of rent by the Lessor or the Lessor's agent *shall not be deemed to be a waiver by the Lessor of any breach by the Lessee* or any covenants herein contained or the Lessor's right to re-enter for breach of condition. Waiver by the Lessor of any breach by the Lessee shall not operate to extinguish the term, covenant or condition the breach whereof has been waived nor be deemed to be a waiver of the Lessor's right to declare a forfeiture for any other breach thereof.

Lease Agreement, part II, section F (emphasis added).

¶9 In addition, where the language of a writing is plain and precise, the court can, as a matter of law, establish the intent of the parties from the writing. *Ada v. K. Sadhwani's, Inc.*, 3 N.M.I. 303, 310 (1992). The lease agreement specifically states the acceptance of rent shall not be a waiver to any breach.

**B. Sablan Enterprise's Notice of Default to New Century was not defective**

¶10 ■ Whether notice is defective is a question of law, not fact. *Farrell v. Brown*, 729 P.2d 1090, 1095 (Idaho Ct. App. 1986).

¶11 The lease specifically provides that any notices shall be sent to New Century at the address listed in the lease or its last known address:

> *Any notice* or demand of the Lessor or Lessee or any other person provided for or permitted by the Lessee may be given sufficiently for all purposes in writing, mailed as registered or certified mail, return receipt requested and postage fully prepaid, addressed to such party at its post office address herein specified or the last known address of such party or person, and shall be deemed conclusively to have been given on the date of such mailing . . . .

Lease Agreement, part II, section G (emphasis added).

¶12 The evidence in the record is clear and undisputed that notice was sent to New Century at both its addresses listed in the lease and at its last known addresses shown on the government corporation records. New Century's registered agent signed the return receipt and Attorney Del Priore responded to the notice in writing on behalf of New

Century.

¶13 Appellant argues that notice was defective because the current corporate President, Leslie Moreno, did not personally receive a copy of the Notice of Default.[3] Sablan Enterprises complied with the notice required in the lease and individual notice to New Century's President is not legally required.

¶14 Appellant also argues that the notice was defective because it was signed by Sablan Enterprise's attorney, who was not named in the lease. There is no merit to this contention. A corporation can give notice through its attorney.

**C. There is no material issue of fact as to New Century's counterclaim**

¶15 Under the terms of the lease agreement, any modifications had to be in writing:

> It is hereby expressly agreed that this lease agreement contains all of the terms, covenants, conditions and agreements between the parties hereto relating in any manner to the use or occupancy of the premises, and that no prior agreement or understanding pertaining to the same shall be valid or of any force or effect, and that the *terms, cannot be altered, changed, modified, or added to except in writing signed by the parties* hereto.

Lease Agreement, part II, section L (emphasis added).

¶16 In the counterclaim, New Century alleges that Sablan Enterprises encouraged them to invest money to refurbish the leased premises and that Sablan Enterprises agreed to accept rent on dates other than those regularly scheduled because of the renovations. Therefore, New Century claims that Sablan Enterprises is now estopped from declaring New Century in breach and default of the lease agreement.

¶17 ■ It is undisputed that the parties never entered into any written agreements to change the terms of the lease agreement. Therefore, any oral promises which New

---

*Nesmith,* 400 S.E. 2d 296, 298-300 (W. Va. 1990); *Watson v. Arcadian Foods,* 447 N.W.2d 477, 479 (Neb. 1989).

[3] Notice to the addresses in the lease were mailed on September 15, 1994. Notice to the last known address to the corporation and its registered agent were mailed on September 26, 1994. The corporation and its registered agent received the notices on September 29, 1994. The lease provides that the notice is deemed conclusively given upon mailing, but also requires that mail be sent by certified or registered mail, return receipt requested and that New Century be given thirty days to cure. We need not resolve possible contradictions as to when notice was given because, even using the date most favorable to New Century, it is undisputed that New Century did not cure the default within 30 days.

Century relied on in changing the terms of the lease agreement are invalid since they were not written and agreed to by the parties. Courts generally give effect to integration clauses which stipulate that any modifications to the lease must be in writing. *See Valley Properties, Inc. v. King's Dep't. Stores, Inc.*, 505 F.Supp. 92 (Mass. Dist. Ct. 1981).

## CONCLUSION

¶18 Therefore, for the reasons stated above, we hereby **AFFIRM** the Superior Court's June 9, 1995 order granting summary judgment in favor of Sablan Enterprises.

---

MACK, Special Judge, concurring in part and dissenting in part:

¶19 I concur with the majority's decision and opinion set forth in Section B (regarding claimed defective notice) and Section C (regarding Appellant's counterclaim).

¶20 I respectfully dissent from the majority's opinion set forth in Section A (Appellant's defense based on Sablan's alleged waiver of breach) and from its decision to affirm the grant of summary judgment in Sablan's favor. As to the Appellant's defense, I would find that the record raised material facts in dispute and that the trial court did not correctly apply the substantive law.

¶21 The trial court did not include a statement of undisputed facts in its order granting summary judgment. The record reveals undisputed facts as well as seemingly disputed facts.[4]

### Undisputed facts:

¶22 In March 1993, Sablan and New Century entered into a written fifteen year lease agreement. New Century executed the lease through its corporate officer, Pak Chong Il. The lease agreement contained numerous, specific clauses, including a five percent escalating clause in the rental amount, effective every five years. The lease provided rights and remedies upon default in obligations to both Sablan and New Century. If New Century breached the lease, they were entitled to written notice and a right to cure the breach within thirty days, absent extenuating circumstances.

¶23 The lease also contained an "anti-waiver" clause

---

[4] In ruling on the Motion for Summary Judgment, the Superior Court should routinely identify the undisputed facts that form the basis of its ruling; its failure to do so here has left the Supreme Court with the task. *Lifoifoi v. Lifoifoi-Aldan*, 1996 MP 14 ¶2, 5 N.M.I. 1.

which provided that:

> Acceptance of rent by the Lessor or the Lessor's agent shall not be deemed to be a waiver by the Lessor of any breach by the Lessee or any covenants herein contained or the Lessor's right to re-enter for breach of condition. Waiver by the Lessor of any breach by the Lessee shall not operate to extinguish the term, covenant or condition the breach whereof has been waived nor be deemed to be a waiver of the Lessor's right to declare a forfeiture for any other breach thereof.

Lease Agreement, part II, section F.

¶24 The lease also contained a clause requiring any alterations or modifications to be in writing signed by the parties. Sablan and New Century agreed that any required notices would be in writing, sent by registered or certified mail, return receipt requested, addressed to the party at the post office address stated in the lease, or to the last known address of the party. The lease agreement further provided that notice "shall be deemed conclusively to have been given on the date of such mailing." Lease Agreement, part II, section G.

¶25 During the course of the leasehold, Pak Chong Il sold his shares in New Century and New Century had a change in shareholders and corporate officers. Leslie D. Moreno, Sr. became the new president of New Century.

¶26 When the second incremental increase in rent occurred in March 1993, New Century continued to pay rent at the previous rental rate. Sablan accepted the payments for nearly a year and a half before giving written notice in September 1994 to New Century, complaining of the shortage of rent and of unpaid rent as of August 1994.

¶27 On September 15, 1994, Sablan sent its notice of default and thirty day right to cure to Pak Chong Il, and to the corporation itself, at the addresses listed in the lease. The notice stated that Sablan would take steps necessary to terminate the lease if New Century did not cure the default within thirty days.

¶28 Pak Chong Il received the notice on September 22, 1994, and promptly notified Sablan that he was no longer connected to New Century. Sablan then checked the public corporation records and sent notices to New Century and its registered agent on September 26, 1994. New Century received the notices on September 29, 1994.

### Facts alleged by New Century:

¶29 New Century's new President, Leslie Moreno, met with agents of Sablan, Conrad and Vicente Sablan, on several occasions. Sablan was informed of the change in ownership of New Century and knew of Moreno's involvement. Sablan encouraged Moreno to make

improvements at the building and Sablan understood that such improvements would disrupt the cash flow of New Century, causing delays in payment of rent. Sablan agreed that New Century could make the improvements and Sablan would be patient in accepting the rent. New Century did undertake improvements and spent considerable amounts of money. New Century also made rent payments totaling $18,000 during the pendency of the action, which Sablan accepted.[5] New Century had just received a billing, dated May 22, 1995, from Sablan showing rent due in the amount of $935 for the term of May 15 to June 14, 1995. New Century intended to clarify the accounts and pay any outstanding debt.

**Facts alleged by Sablan:**

¶30 Sablan denied having an oral understanding with New Century that it would acquiesce in late or sporadic payments of rent. Sablan also alleged that one of the checks tendered by New Century during the pendency of the action had bounced. Sablan claimed at the June 7, 1995, hearing that $2,730 was owed and requested judgment in that amount.

**Proceedings below:**

¶31 Sablan filed suit on October 24, 1994, and, in its complaint, sought a court order terminating the lease and awarding (monetary damages) for unpaid rent. New Century timely answered, challenging the notice, and claiming an oral understanding with Sablan. New Century also filed a counterclaim asserting that forfeiture of the lease would be inequitable because of the significant improvements made at the premises by New Century.

¶32 The parties engaged in lengthy discovery. Sablan eventually sought summary judgment on its complaint. New Century opposed the motion and included as a defense to summary judgment its claim that Sablan had waived the breach during the pendency of the action. New Century also sought summary judgment on its counterclaim.

¶33 The Superior Court heard the motions on June 7, 1995, and ruled in favor of Sablan from the bench, holding that the non-waiver clause of the lease was conclusive. The written judgment was filed on June 9, 1995.[6] New

---

[5] If this allegation were true and if the September 1994 notice contained an accurate statement of amount owed by New Century, then New Century would have been paid up through June 14, 1995, and have paid part of the next month's rent, due on June 15, 1995.

[6] The trial court ruled from the bench and instructed the prevailing party, Sablan, to reduce the decision to written form.

Century timely appealed.

**ANALYSIS**

**Non-payment of rent from March 1993 through July 1994; the non-waiver clause.**

¶34 It is an undisputed fact that New Century paid rent at the former rate without paying the incremental addition from March 1993 through July 1994. Sablan made no effort to prove that it gave notice of those breaches and Sablan continued to accept the rent as paid.

¶35 The non-waiver clause of the lease provides that Sablan's acceptance of rent is not to be construed as a waiver of any breach. The meaning and enforceability of such a clause is a matter of first impression in the Commonwealth.

¶36 There is a split of authority among the courts of the United States on the effect of a non-waiver clause in a lease or contract. *M.J.G. Properties, Inc. v. Hurley*, 537 N.E., 2d 165, 166 (Mass. App. Ct. 1989). I find persuasive the line of cases that give significant weight to the non-waiver clause, but do not necessarily rule out a finding of waiver. *Id.; Summa Corp. v. Richardson*, 564 P.2d. 181, 185 (Nev. 1977).

¶37 In this case, besides the anti-waiver provision, I find significant Sablan's failure for nearly one and a half years to complain of the shortfall of the rent and the fact that the non-waiver clause specifically permits Sablan to waive breaches of the lease agreement. I would hold that the non-waiver condition may be waived by conduct. *See, e.g. Easterling v. Peterson*, 753 P.2d 902, (N.M. 1988). In *Fisher v. Tiffin*, the court held that the non-waiver provision was waived by the vendor's acceptance of late payments for four years. The vendor was required to give notice of intent to insist on strict compliance with the contract before the court would find a breach sufficient to foreclose on the contract. 551 P.2d. 1061, 1062-3 (Or. 1976).

¶38 However, the lease agreement is clear that, even where the breach is waived, the terms of the lease continue in effect. Consequently, I would hold that Sablan had no basis to terminate the lease for the non-payment of the incremental addition from March 1993 through July 1994; however, its right to collect this rental amount remained unimpaired.

¶39 In August 1994, New Century again failed to pay the incremental rental amount. New Century also failed to

---

The record indicates that the court then signed and filed a verbatim copy of the order prepared by Sablan's counsel. Under these circumstances, we subject the court's order to particularly careful scrutiny. *Lifoifoi*, 1996 MP 14 ¶20, 5 N.M.I. 1.

make the rental payment on the September 15, 1994, due date. Sablan sent notice of New Century's default.

### Rent payment of October 1994 to time of hearing: Waiver.

¶40 It is an undisputed fact that New Century owed rent under the terms of the lease at the time of the notice and did not cure the default within thirty days. However, during the pendency of the action, New Century made rental payments and Sablan accepted those payments.

¶41 As of the time of the hearing motion for summary judgment, a material dispute existed regarding the amount of rent, if any, that was owed by New Century. Sablan, through counsel, represented to the court that $2,730 was owed. New Century, through the Declaration of its President, contended that payments had been made which, when added up, would have put New Century ahead of its obligation. New Century also submitted a billing from Sablan stating that rent owed for May 1995 was only $935; this statement was more recent than the declaration upon which Sablan's counsel relied. New Century sufficiently presented support of its dispute of material facts to the trial court.[7]

¶42 The existence of these disputes raises the issue of waiver. The Superior Court held that the non-waiver clause was completely binding on the court and that the court had no opportunity to consider whether Sablan waived any breach of the lease. As noted above, I would hold that the Superior Court erred in its assessment of the substantive law. A non-waiver clause in a lease is given great weight; however, it is not conclusive, especially where, as here, the complete clause includes implied recognition that the lessor can waive a breach by its conduct.[8]

¶43 A waiver requires: (1) at the time of the waiver the existence of a right, privilege, advantage, or benefit which may be waived; (2) actual or constructive knowledge thereof; and (3) an intent to relinquish such right,

privilege, advantage, or benefit. *In re Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982). Where the only facts supporting waiver are a few instances of acceptance of late rent, the court may conclude as a matter of law that the intent to waive is legally rebutted by the non-waiver lease provision. *See, e.g., Karbelnig v. Brothwell*, 53 Cal. Rptr. 335, 340 (Cal. Dist. Ct. App. 66). It is here that the majority stops its analysis and affirms the lower court's ruling.

¶44 I disagree with the majority's opinion; however, because I would hold that where additional factual support of a waiver is presented, such as the length of time over which the practice of acceptance of late rent continues, the number of instances, or other circumstances related to acceptance of rent, the issue of waiver becomes a question of fact. *M.J.G. Properties, Inc.*, 537 N.E., 2d at 166-167; *Dillingham Commercial Co. Inc. v. Spears*, 641 P.2d 1, 8 (Alaska 1982)

¶45 In this case, New Century presented a declaration from Moreno containing a description of an oral understanding[9] concerning improvements and delays in rent; and a billing dated May 22, 1995 for future rents not due until June 15, 1995 (after the scheduled hearing on the motion for summary judgment). The declaration submitted by Sablan in support of its motion also contained an accounting,[10] which reflected that Sablan had accepted advance rent in February 1995, which, by Sablan's reckoning in this accounting, not only caught New Century up to date on its rent, but also paid more than half of the March rent.[11] There was a material factual dispute about the oral understanding, which, if proved, could support a waiver of breach by Sablan. The acceptance of future rent and the billing for future rent could also support a waiver of breach of late payments as to the remedy of forfeiture of the lease.

¶46 Thus, in my opinion, the Superior Court erred in its legal assessment that the non-waiver clause in the lease was conclusive. A material factual dispute exists whether Sablan waived the breach of the lease so as to relinquish its right to demand forfeiture of the remainder of the lease

---

[7] I note that New Century did not raise on appeal the issue of the factual dispute about how much rent was owed. Because I would reverse on the issue of waiver, however, I would vacate the judgment and remand the entire case for further consideration.

[8] The language of the lease, "Waiver by the Lessor of any breach by the Lessee shall not operate to extinguish the term, covenant or condition the breach whereof has been waived nor be deemed to be a waiver of the Lessor's right to declare a forfeiture for any other breach thereof" clearly contemplates the power of the lessor to waive a breach. I would hold that this waiver can be accomplished by conduct as well as by written or oral words. Waiver of a breach is not the same, however, as modification of a lease term.

---

[9] This is clearly insufficient under the terms of the lease to constitute a modification of the lease; however, it could support a waiver of breach by late or inconsistent payment of rent.

[10] I note that the accounting figures do not match the figures given in the September 1994 notices to New Century.

[11] If Sablan's own submission is to be believed, Sablan's counsel misinformed the Superior Court during oral arguments when he stated that "...the defendant hasn't been current in the payment of its rent since March of 1993 - more than two years ago."

term.[12] Summary judgment is not appropriate where a dispute of material facts exists.

¶47 New Century also raised the issue of equity as a grounds for avoiding forfeiture of the lease. Equity abhors a forfeiture. *Fellows v. Martin*, 584 A.2d 458, 463 (Conn. 1991). In considering whether to grant relief from a forfeiture, the court must consider: (1) whether, in the absence of equitable relief, one party will suffer a loss *wholly disproportionate* to the injury to the other party; and (2) whether the injury to the other party is reparable. *Id.* New Century claims reversible error for the Superior Court's failure to consider its equitable claims and defenses. Because I reverse on other grounds, I do not reach the merits of this issue.

¶48 Based upon the forgoing reasons, I would reverse the Superior Court's June 9, 1995, Order and remand for further proceedings consistent with this opinion.

---

[12] Sablan also could have avoided the issue of waiver by requesting permission from the Superior Court to accept ongoing rent during the pendency of the action without prejudice to its claim to terminate the lease. *See, e.g. In re Wil-Low Cafeterias, Inc.*, 95 F.2nd 306, 309 (2nd Cir. 1938).