Filed 2/10/23

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| SLEEP E-Z, LLC, | ) No. BV 033670 |
| Plaintiff and Appellant, | ) Stanley Mosk Trial Court |
| v. | ) No. 21STUD00801 |
| SILVIA LOPEZ, | ) |
| Defendant and Respondent. | ) **OPINION** |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Killefer, Judge.  Affirmed.

Law Office of Allen R. King and Allen R. King, for Plaintiff and Appellant.

Inner City Law Center and Kaimipono D. Wenger; Musick, Peeler, & Garrett LLP and Dan Woods, for Defendant and Respondent.

\*          \*          \*

Plaintiff Sleep E-Z, LLC, appeals from the judgment in favor of defendant Silvia Lopez following an unlawful detainer court trial. The contested issue at trial and on appeal is whether defendant violated a lease covenant prohibiting an assignment of her leasehold interest by leaving the country for a prolonged period while her common law husband, who was not a named tenant, resided in the premises and paid some rent during defendant's absence. The trial court found there was insufficient proof of an assignment and awarded judgment in favor of defendant. Plaintiff appeals contending that because it proved a presumption of assignment that was not rebutted by defendant, the trial court erred by awarding judgment to defendant. We hold a third party's occupancy and payment of rent may lead to a permissive inference, but not a mandatory presumption, of assignment. Accordingly, we affirm the judgment for defendant and award costs on appeal.

BACKGROUND

The property at issue is a rent-controlled unit in a residential apartment complex located at 1851 South La Brea Avenue. By a complaint filed on March 30, 2021, plaintiff alleged, in pertinent part, the following: the parties, in 2012, entered into a written lease agreement in which defendant agreed to pay rent of $412.15 on the first day of each month; on March 22, 2021, plaintiff caused to be served upon defendant a three-day notice to quit with a subheading of "Improper Subletting, Nuisance, Waste, or Illegal Use"; and defendant failed to deliver possession of the premises as demanded in the notice.[1]

Defendant's answer was a general denial and several affirmative defenses. The cause proceeded to a court trial where defendant, Juan Quiroz (defendant's common law husband),

---

[1]The March 22, 2021 notice to quit states: "You are hereby notified that you are required within three (3) days from the date of service on you of this notice to vacate and surrender possession of the premises by reason of your having committed the following nuisance, waste, unlawful use, or unlawful subletting: [¶] On Tuesday, October 6, 2020, the owner served a 3-day notice to perform or quit (copy attached)[] to cancel the assignment and occupy the premises. You failed to comply within the notice period. . . . [¶] . . . . [¶] As a result of your having committed the foregoing acts, the lease or rental agreement under which you occupy the premises is terminated. . . ." (Capitalization & emphasis omitted.)

and Victor Ricks (plaintiff's apartment manager), testified as witnesses. The trial testimony was as follows.

Quiroz has resided at the subject premises since 1978, and defendant moved into the unit with Quiroz in 1990. In 2007, and under a prior lease agreement, the parties agreed to a change in terms of tenancy in which defendant was to pay a 10-percent surcharge for an unidentified, additional adult occupant. On July 30, 2012, plaintiff and defendant executed the written lease agreement that is the subject of this action.[2] Quiroz was not named as a tenant in the lease, but he continued to reside in the unit.

Defendant tendered rental payments to plaintiff until October 2019, when she traveled to Mexico to care for her ailing brother. Defendant did not move any personal belongings out of the unit, she had no other residence, she did not notify plaintiff of her departure because a long stay in Mexico was not anticipated, and she did not intend to assign her interests to Quiroz or otherwise alter her tenancy in any way.

Between November 2019 and February 2020, in defendant's absence, Quiroz remained in the unit and tendered the rent payments to plaintiff by money order. In March 2020, after COVID-19 was declared a global pandemic, defendant desired to return to the United States, but she believed her immigration status would prevent reentry.[3] When plaintiff did not receive defendant's rent payment for March 2020,[4] Ricks knocked on the door of the unit. Quiroz

---

[2]Section 5 of the lease provides, "[t]he premises shall not be occupied by more than the maximum number of 'Agreement' occupants set out in Section J, unless required by law, nor by any person other than the Named Renter set out in Section K without the advance written consent of the Owner and at the additional rent set out in Section L or prescribed by law. Renter's right to possession shall not be assigned nor sublet."

    Section J limits the maximum occupancy of the unit "per Agreement" to two persons.
    Section K does not identify any additional "Named Renter".
    Section L, reserved for "Added per Occupant Rent," is left blank.
    Section 13 requires tenant to provide 30-days' notice to the landlord of intent to vacate.

[3]It was plaintiff's position that defendant was authorized to reenter the country based on her status as a permanent resident, as reflected in a judicially noticed memorandum from the Department of Homeland Security.

[4]This point was disputed at trial. According to Ricks, plaintiff did not receive rental payments between March and October 2020, while defendant testified that partial payments were tendered to plaintiff in accordance with the COVID-19 rental assistance guidelines. No further discussion is

answered and told Ricks that defendant was in Mexico, and he did not know when she would return. Ricks did not ask Quiroz why he was present in the unit or inquire whether defendant had assigned her tenancy interests to Quiroz. Ricks had no contact with defendant until she returned to the unit after service of the October 6, 2020 notice.[5]

The trial court found that plaintiff did not meet its burden to prove an unauthorized assignment of interests by defendant, and it entered judgment in favor of defendant and against plaintiff for possession of the premises. The court credited defendant's testimony that she did not intend to assign or convey her leasehold interest to Quiroz when she temporarily traveled to Mexico to care for her ailing brother, and that she had always intended to return to the unit as soon as she was permitted to reenter the United States. The court also found defendant retained a reversionary interest under Civil Code section 1946 and the lease agreement, which renewed as a matter of law at the end of each month.[6] Plaintiff pursued this timely appeal from the judgment.

## DISCUSSION

Plaintiff argues the judgment was premised upon a misapplication of the law as to whether defendant assigned her tenancy interests to Quiroz. Relying on *Weintraub v. Weingart* (1929) 98 Cal.App. 690 (*Weintraub*) and *Karbelnig v. Brothwell* (1966) 244 Cal.App.2d 333

---

warranted given that plaintiff did not seek possession of the premises on the theory defendant failed to pay rent.

[5]The October 6, 2020 notice states: "You are hereby notified that you are in violation of the lease or rental agreement under which you occupy the above-described premises in that . . . [¶] [y]ou are in violation of lease paragraph 5 which prohibits the assignment of your rights under the lease . . . [¶] In the following manner: You have assigned the contract to a male individual believed to be named Juan. You have vacated the property. . . . In order to correct this violation, Silvia Lopez must occupy the premises as one of the residents." (Capitalization & emphasis omitted.)

[6]"A hiring of real property, for a term not specified by the parties, is deemed to be renewed as stated in Section 1945, at the end of the term implied by law unless one of the parties gives written notice to the other of that party's intention to terminate the same, at least as long before the expiration thereof as the term of the hiring itself, not exceeding 30 days; provided, however, that as to tenancies from month to month either of the parties may terminate the same by giving at least 30 days' written notice thereof at any time and the rent shall be due and payable to and including the date of termination." (Civ. Code, § 1946.)

(*Karbelnig*), it is plaintiff's position that Quiroz's occupancy of the unit and his tender of rent payments in defendant's absence triggered a presumption of assignment. Plaintiff further contends that although intent is not an element to establish a presumption of assignment, defendant's actions clearly reflect an intent to assign, and defendant failed to rebut this presumption. In contrast, defendant maintains no assignment occurred and Quiroz was the equivalent of a tenant.

The issues raised by the parties present mixed questions of law and fact. We review the court's factual findings to determine whether they are supported by substantial evidence, and we review de novo the court's conclusions of law based upon its factual findings that are supported by substantial evidence. (*ASP Properties Group, L.P. v. Fard, Inc*. (2005) 133 Cal.App.4th 1257, 1266.) "In determining whether a judgment is supported by substantial evidence, we . . . must view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court. [Citation.] We may not substitute our view of the correct findings for those of the trial court; rather, we must accept any reasonable interpretation of the evidence which supports the trial court's decision." (*Beck Development Co. v. Southern Pacific Transportation Co*. (1996) 44 Cal.App.4th 1160, 1203.) To be substantial, such evidence must be of ponderable legal significance, reasonable in nature, credible, and of solid value to prove the essentials which the law requires in the particular case. (*Id*. at pp. 1203-1204.)

A tenant is guilty of unlawful detainer, as pertinent here, by assigning or subletting the premises contrary to the covenants of the lease agreement.[7] (Code Civ. Proc., § 1161, subd. 3; see also *Licht v. Gallatin* (1927) 84 Cal.App. 240, 245.) An assignment transfers the lessee's entire interest in the property, whereas a sublease transfers only a portion of the interest with the lessee retaining a right of reentry at some point during the remaining term of the lease.

---

[7]The parties do not dispute that plaintiff's claim was limited to an allegation of improper assignment. There is some confusion on this point given the basis for the March 22, 2021 three-day notice to quit was identified as unlawful *subletting*, but the body of the notice claimed defendant committed an unauthorized *assignment*. The substance of the notice prevails over its form. (Civ. Code, § 3528.)

(*Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 492, fn. 2; see also *Vallely Investments, L.P. v. BancAmerica Commercial Corp.* (2001) 88 Cal.App.4th 816, 823.)  No particular form is required but, for an assignment to be effective, it is essential that the lessee manifest a "clear and positive" intention to transfer its leasehold rights to a third party.  (*Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291-292; *Cobb v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2002) 98 Cal.App.4th 345, 352-353.)  A valid assignment creates a privity of estate between the lessor and the assignee.  (*Flynn v. Mikelian* (1962) 208 Cal.App.2d 305, 310.)

The *Weintraub* case involved a commercial lease agreement containing a covenant against assignment.  (*Weintraub*, *supra*, 98 Cal.App. at p. 691.)  The tenant executed a written agreement assigning to a third party the right to occupy the property and the related duty to "'pay all rentals and obligations,'" while providing assurances to the landlord that the third party had no interest in the property.  (*Id*. at pp. 696, 700-701.)  The trial court found the tenant impermissibly assigned its lease interests, and the Court of Appeal affirmed.  (*Id*. at pp. 695, 702.)  Citing out-of-state authority, the court held "there is a presumption of assignment which follows occupancy of the leased premises by another than the lessee, especially when the occupant pays the rent and cost of maintenance.  [Citations.]"  (*Id*. at p. 700.)  Courts look to whether the lessee conferred upon a third party the rights and burdens of the lease for the balance of the term, without retaining any reversionary interest thereto.  (*Id*. at pp. 698-699.)

*Karbelnig* involved a lease agreement with a clause prohibiting any assignment or subletting without first receiving the landlord's consent.  (*Karbelnig*, *supra*, 244 Cal.App.2d at pp. 334-335.)  The landlord declined the tenants' request to assign their leasehold interest to subtenants, but they nevertheless transferred their interests to the subtenants without consent.  (*Id*. at pp. 335-337.)  The subtenants paid rent directly to landlord, who each month sent a letter indicating that acceptance of rent was not to be construed as a waiver to any unauthorized assignment.  (*Id*. at p. 337.)  Despite this protestation, the trial court found the landlord waived the covenant against assignment by accepting rental payments from the subtenants.  (*Id*. at p. 339.)  In reversing, the appellate court acknowledged, under *Weintraub*, "[t]here is a

presumption of an assignment which follows occupancy of the leased premises by one other than the lessee, especially when the occupant pays the rent and cost of maintenance", and "[s]ince the prohibited assignment may result in a forfeiture, the condition will be construed strictly against the lessor. [Citation.]" (*Id*. at p. 341.) Nevertheless, the court determined the record was "barren" to establish a waiver of the covenant against assignment given the landlord repeatedly notified the tenants that acceptance of rent was not to be construed as consent and promptly filed the cause of action upon discovery of the breach. (*Id*. at pp. 342-343.)

In the 56 years following *Karbelnig*, no published case has addressed whether, under the language in *Weintraub*, payment of rent by a third-party occupant creates a "presumption" of assignment. The issue has frequently arisen in this court. We now resolve the uncertainty.

A "presumption" is defined as "an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (a).) In contrast, "[a]n inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) These evidentiary devices "are sometimes loosely used as interchangeable, but, of course, there is a clear distinction between them when accurately employed." (*Fahey v. Madden* (1922) 56 Cal.App. 593, 599-600 (conc. opn. of Burnett, J.).) Put simply, a presumption is mandatory while an inference is permissive. (*In re Ivey* (2000) 85 Cal.App.4th 793, 803; see also *Estate of Roberts* (1942) 49 Cal.App.2d 71, 81 ["The court must find according to a presumption, in the absence of evidence legally sufficient to overcome it"]; see also *State v. Day* (1946) 76 Cal.App.2d 536, 548 ["Unless mandatory presumptions are prescribed by statute, and in the absence of a question of law, it is the duty of the court . . . to deduce an inference from a fact legally proved"].)

We are aware of no authority, and plaintiff does not provide any, which mandates a presumption of assignment based solely on a third-party's occupancy and payment of rent. Thus, it is our view that plaintiff's argument relies upon a misapplication of the word "presumption" as it pertains to *Weintraub* and *Karbelnig*, and that it is more accurate to deem

the acceptance of rent from an unauthorized occupant to yield an inference, but not a presumption, of assignment.[8]

Applying the above principle of using an inference versus a presumption in the analysis of the circumstances in the case *sub judice*, a reasonable trier of fact could find that defendant's actions did not manifest a "clear and positive" intent to assign her leasehold interests to Quiroz. (See *Cockerell v. Title Ins. & Trust Co.*, *supra*, 42 Cal.2d at p. 292.) The trial court credited testimony that defendant did not intend to assign or abandon her leasehold interest when she traveled to Mexico to temporarily care for her brother, that defendant did not move her belongings out of the unit and had no other place to live, and that defendant got stranded in Mexico during the COVID-19 pandemic due to her immigration status. This determination is supported by the evidence and must be honored by this court. (*ASP Properties Group, L.P. v. Fard, Inc.*, *supra*, 133 Cal.App.4th at p. 1266; *Beck Development Co. v. Southern Pacific Transportation Co.*, *supra*, 44 Cal.App.4th at pp. 1204-1205.) More, the court appropriately construed the assignment covenant strictly against plaintiff to avoid a forfeiture of defendant's tenancy rights. (*Karbelnig*, *supra*, 244 Cal.App.2d at p. 341; *Licht v. Gallatin*, *supra*, 84 Cal.App. at p. 245.) There was no misapplication of the law to the facts by the trial court.

---

[8]This court is no doubt bound by *Weintraub* and *Karbelnig* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456), but we deem both decisions to be "materially distinguishable" from this case (*Long v. Superior Court* (1985) 170 Cal.App.3d 499, 508). Unlike *Karbelnig*, *supra*, 244 Cal.App.2d 333, the issue of whether defendant violated the assignment clause was disputed at trial, and plaintiff did not immediately object to Quiroz's occupancy upon discovery of the potential breach of covenant. Also, contrary to *Weintraub*, *supra*, 98 Cal.App. 690, there was no direct evidence defendant assigned her rental obligations to Quiroz while providing conflicting assurances to plaintiff, and defendant, unlike in *Weintraub*, retained a reversionary interest in the lease as a month-to-month tenant, pursuant to Civil Code section 1946. (See *ante*, fn. 6.)

## DISPOSITION

The judgment is affirmed.  Costs on appeal shall be awarded to defendant.


_____
P. McKay P. J.

We concur:


_____                    _____
Ricciardulli, J.                            Richardson, J.